# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1990

_____

Ray Dansby,

          Appellant,

    v.

Larry Norris, Director, Arkansas
Department of Correction,

          Appellee.

\*
\*
\*
\*   Appeal from the United States
\*   District Court for the
\*   Western District of Arkansas.
\*
\*
\*
\*

_____

Submitted: September 19, 2011
Filed: June 21, 2012

_____

Before RILEY, Chief Judge, COLLOTON, and GRUENDER, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Ray Dansby was convicted by a jury in Arkansas on two counts of capital murder and sentenced to death. The district court denied his application for a writ of habeas corpus. Dansby appeals on five claims covered by a certificate of appealability, and he asks this panel to expand the certificate with respect to four other claims. We affirm in part, vacate the dismissal of Claims II and III in Dansby's second amended petition, deny the applications to expand the certificate, and remand for further proceedings.

I.

As summarized by the Arkansas Supreme Court, *see Dansby v. State*, 893 S.W.2d 331 (Ark. 1995), the evidence at trial showed that on the morning of August 24, 1992, Dansby arrived at the residence of Brenda Dansby, his ex-wife, in El Dorado, Arkansas. Justin Dansby, their nine-year-old son, was in the living room with Ronnie Kimble, Brenda's boyfriend. Justin was home with a cold and watching television, while Kimble was asleep on the couch. Brenda had left earlier to buy orange juice for Justin, and when she returned home, she was confronted by Ray as she pulled her car into her driveway. Ray twice ordered her to leave her car, and she eventually complied. Justin testified at trial that he saw Ray hold Brenda "like a shield" before shooting her in the arm and in the neck.

Greg Riggins, a neighbor from across the street, also offered an account of Brenda's death. According to his trial testimony, Riggins went to his front door after hearing gunshots and witnessed Ray and Brenda struggling with a revolver. He then saw Ray knock Brenda down, get the gun from her, and shoot two consecutive rounds into her from two or three feet away. Brenda tried to rise, and Ray fired again, although Riggins believed the shot missed. After pausing for five or six seconds, Ray shot Brenda once more, and her body went flat.

Justin testified that Ray then entered the home and shot Kimble in the chest, at which point Kimble got his own gun from beneath the couch. Kimble positioned himself behind the couch and attempted to return fire, but his gun only produced "clicking sounds." Ray chased Kimble to the back of the house, and Justin heard about five more shots. When Justin went to investigate, he saw his father standing over Kimble, kicking him twice and then saying something Justin could not remember. Justin accompanied his father outside the house, where he saw his mother, motionless, with "blood all over her neck." Ray and Justin walked down the road, and after they separated, Justin called the police.

El Dorado police officers arrived at Brenda's home to find her body outside. They also found an injured Kimble on the floor of the back bedroom, along with a jammed .38 automatic pistol lying under him. Kimble eventually died of his wounds at a local hospital, but not before telling a police detective that Ray Dansby had shot him.

Later the same day, Officer Mike Stegall came upon Ray Dansby, who said, "I'm Ray Dansby, ya'll are looking for me." Stegall asked Dansby whether he was carrying any guns, and Dansby answered that he had thrown them away. Stegall then took Dansby to the police station, where Lieutenant Mike Hill advised him of his rights. Dansby stated that he had left the scene with two guns, a .32 revolver and a .38 revolver, but had disposed of them where the police would never find them. By Dansby's account of the day's events, he had armed himself before traveling to Brenda's home because he knew both she and Kimble had handguns. Dansby explained that he had entered the front door to Brenda's home to find Kimble holding a handgun in his right hand "pointed down," and Dansby stated that after an argument ensued, "I just pulled my gun and started shooting." After making these statements, Dansby submitted to a gunshot residue test and signed a written rights waiver form, but he declined to provide a tape-recorded statement.

At trial, prosecutors presented several pieces of evidence beyond the eyewitness testimony of Justin Dansby and Greg Riggins. The autopsy revealed gunshot wounds near Brenda's left ear and on her upper chest; similar wounds were found on Kimble's chest, right arm, and left upper back, behind his left ear, and superficial wounds were present on his left flank. The jury also heard testimony that Dansby was scheduled to appear in court on charges of second-degree assault and contempt of court at 9:00 a.m. on the day of the murders, and that state prosecutors brought these charges after Brenda had provided them with a signed affidavit alleging that Dansby had assaulted her.

-3-

Also testifying for the prosecution was Dansby's jail cellmate Larry McDuffie, the boyfriend of Dansby's half-sister. McDuffie said Dansby admitted in jail that he had murdered Kimble and Brenda. According to McDuffie, Dansby told him he was "just glad" that Brenda was dead. McDuffie also testified that in response to Brenda's pleas for mercy, Dansby answered, "well b---- you done f----- up cause I'm not gonna leave you out here in these streets when I done killed this man inside."

An Arkansas jury convicted Dansby of two counts of capital murder on June 11, 1993, and sentenced him to death by lethal injection on both counts. The Arkansas Supreme Court affirmed the conviction and sentence. *Dansby*, 893 S.W.2d at 331. Dansby petitioned for postconviction relief under Arkansas Rule of Criminal Procedure 37, claiming ineffective assistance of counsel. The trial court denied the petition, and the Arkansas Supreme Court affirmed. *Dansby v. State*, 84 S.W.3d 857 (Ark. 2002).

Pursuant to 28 U.S.C. § 2254, Dansby filed a petition for a writ of habeas corpus in the district court. The district court denied relief on all claims and dismissed the petition. The court then denied Dansby's motion to alter or amend the judgment. Dansby sought a certificate of appealability, and the district court granted a certificate on three claims: that Dansby is actually innocent of the murders of Brenda and Kimble, that improper testimony at trial about Dansby's postarrest silence violated his constitutional rights, and that the evidence offered at trial was insufficient to establish premeditation and deliberation. An administrative panel of this court expanded the certificate of appealability to include Dansby's claims that the State failed to disclose material, exculpatory evidence concerning witness Larry McDuffie, and that the trial court impermissibly limited impeachment of McDuffie at trial in violation of Dansby's rights under the Confrontation Clause.

-4-

II.

A.

Dansby's broadest claim (Claim I of the second amended petition) is that new evidence discovered after trial shows that he is actually innocent of murder. On that basis, he argues that the conviction and sentence violate his rights under the Eighth Amendment. Dansby says the new evidence—including documents allegedly withheld by the State and a statement in which prosecution witness McDuffie purportedly recants his trial testimony—would allow him to impeach McDuffie's credibility and establish that Dansby acted in lawful self-defense when he killed Brenda Dansby and Kimble.

The Supreme Court has not decided whether a persuasive demonstration of actual innocence after trial would render unconstitutional a conviction and sentence that is otherwise free of constitutional error. *See House v. Bell*, 547 U.S. 518, 554-55 (2006). The Court has established, however, that the threshold for any such claim, if it were recognized, would be "extraordinarily high." *Herrera v. Collins*, 506 U.S. 390, 417 (1993). The threshold, if it exists, would require "more convincing proof" than the "gateway" standard that allows for consideration of otherwise defaulted constitutional claims upon a showing of actual innocence. *House*, 547 U.S. at 555; *see Schlup v. Delo*, 513 U.S. 298, 315 (1995). Thus, on a freestanding claim of actual innocence, it is not sufficient that a petitioner shows even that it is "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. at 327. The "extraordinarily high" threshold, if recognized, would be even higher. *House*, 547 U.S. at 555.[1]

---

[1]In *Clayton v. Roper*, 515 F.3d 784 (8th Cir. 2008), a panel of this court said that because the habeas petitioner could not point to an independent constitutional violation in his state criminal proceeding, the federal court was "without jurisdiction" to consider his claim of actual innocence. We are unsure why the *Clayton* panel

In its order denying relief, the district court treated this claim as a challenge to the sufficiency of the evidence. When Dansby argued in a motion to alter or amend the judgment that the court misconstrued his claim, the court explained that if it had reached a freestanding actual innocence claim on the merits, then the claim would have failed. The court reasoned that the only evidence proffered in support of actual innocence was impeachment evidence regarding prosecution witness McDuffie, and that a jury could have believed McDuffie even with the new evidence. The court also said that the new evidence, at most, might have established reasonable doubt, but it could not show that no reasonable juror would have found Dansby guilty. There was ample other evidence that negated Dansby's claim of self-defense, the court observed, and it would not have been unreasonable for a juror to reject Dansby's defense even without McDuffie's testimony.

We, too, conclude that Dansby's proffered evidence does not meet the extraordinarily high threshold that might support relief based on a showing of actual innocence. As the district court observed, much of the new evidence is designed to undermine the credibility of prosecution witness McDuffie. Latter-day impeachment evidence, however, "will seldom, if ever," make a clear and convincing case that no reasonable jury could believe the core of the witness's account. *Sawyer v. Whitley*, 505 U.S. 333, 349 (1992). Here, moreover, we agree with the Arkansas Supreme Court that there was substantial evidence apart from McDuffie's testimony that permitted a jury to infer that Dansby killed the victims in a premeditated and deliberate manner. *Dansby*, 893 S.W.2d at 336. The alleged new evidence cited by Dansby with regard to witnesses other than McDuffie, App. A16-A20, does not compel a conclusion that Dansby acted in lawful self-defense. Some of these facts might be disbelieved or discounted by a reasonable juror; others can be reconciled reasonably with the prosecution's theory of the case. Dansby's submission of new

---

thought it lacked jurisdiction, so we follow the approach of *Herrera*, 506 U.S. at 417-19, in addressing Dansby's claim.

-6-

evidence would not meet an extraordinarily high threshold for proof of innocence. The district court thus did not err in rejecting this claim without a hearing.

## B.

Dansby also contends that the evidence at trial was insufficient to show that he murdered Brenda and Ronnie Kimble with premeditation and deliberation. This is Claim XIV of the second amended petition. Dansby raised a challenge to the sufficiency of evidence on direct appeal, and the Arkansas Supreme Court rejected it. The Arkansas court said "[t]he test for determining the sufficiency of the evidence is whether there is substantial evidence to support the verdict," 893 S.W.2d at 335, and ultimately concluded that the evidence of premeditation and deliberation was "overwhelming." *Id.* at 336. Where the state court has adjudicated a constitutional claim on the merits, a petitioner must demonstrate that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).

Dansby argues for the first time on appeal that § 2254(d) does not apply. He contends that the Arkansas court did not adjudicate his constitutional claim on the merits, but instead resolved the sufficiency-of-evidence contention on state-law grounds only. He points out that the state court applied a "substantial evidence" standard, which this court once said is "arguably different than the due-process standard enunciated" in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Nance v. Norris*, 392 F.3d 284, 289 (8th Cir. 2004). *Jackson* held that the Due Process Clause forbids a conviction when "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." 443 U.S. at 324.

We believe that Dansby's constitutional claim was adjudicated on the merits, and that the deferential standard of § 2254(d) applies. Unlike *Nance v. Norris*, where the state court "specifically disclaim[ed] addressing constitutional arguments," 392

F.3d at 289, the Arkansas Supreme Court did no such thing in Dansby's direct appeal. In prior decisions, the Arkansas court has explained its view that the substantial-evidence standard applied in Arkansas cases is consistent with *Jackson*:

> The substantial-evidence standard, while not explicitly reciting the standard from *Jackson* word for word, requires that evidence supporting a conviction must compel reasonable minds to a conclusion, and force or induce the mind to pass beyond suspicion or conjecture, and, thereby, *ensures that the evidence was convincing to a point that any rational fact-finder could have found guilt beyond a reasonable doubt.*

*Williams v. State*, 91 S.W.3d 54, 61 (Ark. 2002) (emphasis added) (internal citations omitted). There is thus no reason to believe that the Arkansas Supreme Court in Dansby's direct appeal adjudicated only a state-law claim while leaving the constitutional due process claim unaddressed. The court adjudicated the two claims together.

Viewing the evidence in the light most favorable to the State, the state court reasoned as follows:

> Although the testimony is at variance among different witnesses as to the exact sequence of events during the shootings, there was much said as to the weapons used, and as to the nature, extent, and location of Ms. Dansby's and Mr. Kimble's wounds. With reference to the shots fired into Brenda, Dr. Peretti testified that he located gunshot wounds near the left ear and upper chest of her body. Greg Riggins, an eye witness to Brenda's murder, testified as to Ray's hesitation of several seconds before he fired the final shot into Brenda's head. In observance of the wounds to Ronnie's body, Dr. Peretti testified that Ronnie sustained wounds to the left ear, chest, left upper back, and right arm, as well as two superficial wounds to the left flank. Particularly, it was Dr. Peretti's opinion that the wound to Ronnie's back occurred when he was "probably bent over." Ray's son Justin, another eye witness, testified

-8-

that he watched as his father kicked Ronnie twice, and that he heard his father say something after shooting him. In light of this testimony, the jury could have easily inferred that Dansby fired multiple shots into both victims in a premeditated and deliberated manner.

*Dansby*, 893 S.W.2d at 336. After considering Larry McDuffie's testimony that Dansby admitted to planning the murders, the court viewed the evidence as "overwhelming." *Id.*

We conclude that the decision of the Arkansas Supreme Court was not contrary to, or an unreasonable application of, *Jackson*. It is not necessary for the state court to cite the relevant Supreme Court precedent, *see Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam), so long as the decision satisfies the criteria of § 2254(d). The Arkansas court concluded that the evidence was "of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture." *Dansby*, 893 S.W.2d at 336. This was not an unreasonable way for a state court to ensure that a rational trier of fact could have found the requisite elements beyond a reasonable doubt. The evidence here surpassed the constitutional threshold with room to spare. The district court properly rejected Dansby's due process claim based on sufficiency of the evidence.

## C.

Dansby next appeals the district court's denial of relief on his claim (Claim VI) that improper testimony and comment on his postarrest silence violated his right to due process under the Fourteenth Amendment. The claim arises from the following testimony at trial by Lieutenant Mike Hill of the El Dorado Police Department.

COUNSEL FOR STATE: Did [Dansby] appear to understand his rights as you verbally advised . . .

-9-

WITNESS: Yes.

COUNSEL FOR STATE: . . . him of them?

WITNESS: Yes, he did.

COUNSEL FOR STATE: And did you have a conversation with him about these events at all?

WITNESS: Yes, after I informed him, of course, that he had the right to remain silent. Anything he said could be used against him in a court of law, and that, you know, if he wanted a lawyer present during questioning he could have one. And I asked him if he understood that at any time, you know, that he didn't wish to talk any longer he didn't have to.

I said or I asked him it's very important that we find this gun. I said anyone could pick this gun up. What did you do with it? At that point he began to tell me that he left the scene with two guns, a .32 and a .38, both revolvers. And that he threw them away where we would never find 'em and he wasn't worried about anybody finding 'em.

After obtaining the gunshot residue kit, I sat down at my desk and again informed him of his rights. This time I read to him his rights from the standard waiver form that we use which he again acknowledged that he understood and signed the form.

COUNSEL FOR STATE: I'll show you what's been marked previously as State's Exhibit No. 2, and ask you if you can identify this, please [handing to witness].

WITNESS: Yes, this is the form that I read to Ray Dansby that morning. It's noted here at the top 9:00 a.m., at the bottom 9:14 a.m. which would have been the time that I read directly to him from the form and that he signed it.

COUNSEL FOR STATE: Okay. *And then at some point did he also decline to talk?*

WITNESS: *Yes, at 9: . . .*

COUNSEL FOR DEFENDANT: Objection.

WITNESS: *. . . 21 a.m.*

COUNSEL FOR DEFENDANT: Objection.

THE COURT: What's your objection?

COUNSEL FOR DEFENDANT: May we approach?

Trial R. 803-04 (emphases added).

At a bench conference, Dansby's counsel objected that it was impermissible for Hill to refer to Dansby's invocation of his right to remain silent. She moved for a mistrial. The trial court did not hear Hill "say anything about anybody invoking anything," and denied the motion for mistrial. *Id.* at 805. The court directed the prosecution to admonish Hill that he should not "make any reference or comment about any rights being invoked or about the defendant refusing to answer questions." *Id.* at 808. And the court directed the prosecution to redact an advice-of-rights form signed by Dansby to remove a notation about his invocation of the right to remain silent. *Id.* at 808. The court then inquired whether Dansby wanted the court to admonish the jury "just in case something slipped through," but Dansby said through counsel that he did not want an admonishment. *Id.* at 808-09.

On direct appeal, Dansby argued that Hill's answer that "Yes," Dansby did decline to talk at some point during the interview, violated Dansby's due process rights as construed in *Doyle v. Ohio*, 426 U.S. 610 (1976). *Doyle* held that when an

-11-

accused invokes his right to remain silent after receiving advice about his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), the Constitution forbids the prosecution to use the accused's silence to impeach his testimony at a later trial. 426 U.S. at 619. The Court reasoned that the *Miranda* warnings carry an implicit assurance that "silence will carry no penalty," and that "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Id.* at 618.

The Arkansas Supreme Court rejected Dansby's claim. The court concluded that "the testimony elicited from Lieutenant Hill was not a comment on Dansby's right to remain silent; rather, it merely explained to the jury why there was not a taped statement." 893 S.W.2d at 340-41. Earlier in the trial, Mike Stegall, another police officer who participated in Dansby's interrogation, testified that "after [Dansby] had given us his statement . . . Lieutenant Hill advised him that we needed to turn the tape recorder on to record his statement. At which point Mr. Dansby invoked his rights and stated that he didn't want to say anything else without a lawyer." Trial R. 676. The Arkansas court evidently believed that Hill's answer, like Stegall's testimony, explained why there was no recording of Dansby's admissions, and that such testimony did not violate Dansby's due process rights.

Because the Arkansas Supreme Court resolved the *Doyle* claim on the merits, Dansby is entitled to relief only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The district court concluded that he could not meet that standard. The court ruled alternatively that any error was harmless.

Dansby contends that the Arkansas court's decision was an unreasonable application of *Doyle* and *Wainwright v. Greenfield*, 474 U.S. 284 (1986). Dansby cites *Greenfield*'s holding that the prosecution could not use an accused's post-

-12-

*Miranda* warning silence to overcome a defendant's plea of insanity, because the implicit promise, breach, and consequent penalty is the same in that situation as when the prosecution seeks to use silence to impeach the accused's testimony at trial. 474 U.S. at 292. Dansby argues that the State impermissibly used his silence to rebut an inference that Lieutentant Hill was fabricating Dansby's unrecorded statement about guns, and that the state court unreasonably applied *Greenfield* and *Doyle* by permitting Hill's testimony that Dansby invoked his right to remain silent.

This court has concluded that not every reference to an accused's post-*Miranda* warning silence violates due process. In *Mathenia v. Delo*, 975 F.2d 444 (8th Cir. 1992), a law enforcement officer testified that he advised an arrestee of his rights, but that the arrestee did not make a statement at the time of his arrest. Other evidence showed that the arrestee made a videotaped statement two weeks later. This court, agreeing with the state court in that case, held that the officer's testimony was "'merely preliminary to the admission into evidence of [the arrestee's] video-taped statement.'" *Id.* at 452 (quoting *State v. Mathenia*, 702 S.W.2d 840, 842 (Mo. 1986)). Evidence that the accused did not make a statement at the time of arrest "merely crystalized what was already suggested by the fact that appellant ultimately did make a statement" at a later date. *State v. Mathenia*, 702 S.W.2d at 842; *cf. Greer v. Miller*, 483 U.S. 756, 763 (1987) ("[T]he holding of *Doyle* is that the Due Process Clause bars the *use* for impeachment purposes of a defendant's postarrest silence.") (internal quotation omitted).

The Supreme Court has not addressed a case like *Mathenia*. The line between permissible references to postarrest silence for explanatory purposes and impermissible breaches of the implied *Miranda*-warning promise, therefore, must emerge from case-by-case applications of *Doyle* over a period of time. In the meantime, state courts have some leeway to reach reasonable judgments in this area. *See Yarborough v. Alvarado*, 541 U.S. 652, 663-64 (2004). It was not an unreasonable application of Supreme Court precedent for the Arkansas court to

-13-

conclude that Hill's answer in this case was permissible. Officer Stegall already had testified without objection that the officers attempted to tape record Dansby's statement, but that Dansby declined to say anything more. Hill's testimony that Dansby declined at some point to speak further could reasonably be viewed by a state court merely as an explanation of the circumstances of Dansby's interview, not as a penalty for invoking the right to remain silent.[2]

## D.

Dansby's fourth point on appeal is that the district court erroneously rejected his claim that the state trial court denied his right under the Sixth Amendment to confront a witness against him, Larry McDuffie. This is Claim II in the second amended petition.

After Dansby was arrested for murder, he was incarcerated with McDuffie in Union County, Arkansas. McDuffie was in jail after his arrest on a pending felony drug charge. Before trial, the prosecution moved *in limine* for an order to preclude the defense from "mentioning or attempting to elicit testimony from any witness regarding the reason for McDuffie's incarceration, and pending charges or related matters." The trial court ruled that charges that had been filed in the past against McDuffie that did not result in convictions "are clearly inadmissible and should not be referred to because the witness may not be impeached in that manner." Trial R. 636. The court provided that Dansby could inquire whether McDuffie had served as a confidential informant for the El Dorado police department and whether he had been paid by that agency for information in the past. *Id.* at 248.

---

[2]It is unnecessary to consider the district court's alternative ruling that any *Doyle* error was harmless, but we note that Hill's disputed answer is cumulative of Officer Stegall's testimony earlier in the trial that Dansby "invoked his rights and stated that he didn't want to say anything else without a lawyer." Trial R. 676.

Dansby's counsel sought additional leeway to elicit testimony designed to show McDuffie's bias. In a memorandum brief and at a pretrial hearing, counsel asserted that McDuffie had a history of working as an informant for the State, that he had been in and out of jail three or four times in recent months, that the State's treatment of previous criminal cases against him was inconsistent with its handling of other cases, that he was not sanctioned for violating conditions of release, and that evidence of these events would show McDuffie's bias toward the State. *Id.* at 296-97, 631-32.

The court ordered that Dansby could inquire whether McDuffie had received promises of leniency or guarantees of immunity, but could not present evidence about "extrinsic matters which would call upon the jury to perform a feat of speculation or conjecture in order to relate it to [the] alleged bias." *Id.* at 637. The court ruled that unless there was "direct evidence of an agreement of a promise of immunity or something along that nature, . . . you're in the realm of speculation and conjecture." *Id.* at 638. The oral ruling concluded as follows: "I'm going to grant the motion in limine as to argument about and statement about these charges and then just allow the matter to proceed as to these other areas." *Id.* at 640. During cross-examination of McDuffie, the court sustained an objection to defense counsel's question about why McDuffie was held in jail at the time of his statement to police about Dansby. *Id.* at 907. Before the case was submitted to the jury, Dansby made a proffer of evidence that he sought to use to show McDuffie's alleged bias. *Id.* at 969-89.

On direct appeal, Dansby challenged the trial court's restrictions on cross-examination, arguing in part that McDuffie's "past dealing with law enforcement, including all the surrounding circumstances of his past criminal record and the penalties or rewards he received, were relevant to the jury's consideration of the testimony he would give at the trial." Dansby urged, among other things, that the trial court's right to limit testimony "must be weighed against the defendant's confrontation rights and fair trial rights guaranteed by the Sixth Amendment." The

Arkansas Supreme Court concluded that Dansby's proffered evidence was "not relevant to show bias," and upheld the trial court's ruling. 893 S.W.2d at 339. The state supreme court opined that Dansby had not proffered direct evidence of an agreement or promise of immunity, and that a jury could not have made a connection between McDuffie's arrests and his alleged bias in the Dansby trial without speculation or conjecture. *Id.*

In his federal habeas petition, Dansby challenged the trial court's ruling as a violation of his rights under the Sixth Amendment. Dansby complained that the ruling unconstitutionally precluded him from cross-examining McDuffie and from introducing extrinsic evidence to expose his bias and motive to fabricate. *But cf. Driver v. Landers*, 444 F. App'x 934, 936 (9th Cir. 2011) ("The Supreme Court has never held that the Confrontation Clause requires, in addition to cross-examination, the admission of extrinsic evidence for the purpose of establishing a witness's motive to lie."); *Brown v. Ruane*, 630 F.3d 62, 70-71 (1st Cir. 2011) ("[T]he Supreme Court's Confrontation Clause jurisprudence left a defendant's right to introduce extrinsic impeachment evidence as an open constitutional question.").

The district court dismissed this claim on the ground that it was procedurally defaulted. The court concluded that Dansby never presented a claim of federal constitutional error in his direct appeal to the state supreme court, and that the claim was therefore defaulted. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). The district court noted that Dansby's brief on direct appeal included one mention of the Sixth Amendment, but reasoned that Dansby failed to assert that the trial court's ruling violated his federal constitutional rights.

Dansby argues that he fairly presented a federal constitutional argument to the state supreme court, and we agree. To exhaust a claim properly in state court, a prisoner must give the state courts a fair opportunity to act on the claim. *Id.* at 844. A petitioner must present "*both* the *factual and legal* premises'" of his claims to the

state courts in order to exhaust the claims properly. *Flieger v. Delo*, 16 F.3d 878, 884 (8th Cir. 1994) (quoting *Cox v. Lockhart*, 970 F.2d 448, 454 (8th Cir. 1992)). The legal aspect of this requirement is satisfied if the petitioner's argument to the state court "refer[s] to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." *Abdullah v. Groose*, 75 F.3d 408, 412 (8th Cir. 1996) (en banc) (internal quotation omitted).

As noted, Dansby's brief on direct appeal to the Arkansas Supreme Court argued that limits on impeachment "must be weighed against the defendant's confrontation rights and fair trial rights guaranteed by the Sixth Amendment." The brief also cited *Sullivan v. State*, 798 S.W.2d 110 (Ark. Ct. App. 1990), for the proposition that "[e]vidence of guarantees of immunity or promises of leniency or any other considerations are a proper subject for cross examination." As authority for this same point, *Sullivan* cited *Delaware v. Van Arsdall*, 475 U.S. 673 (1986), a decision that addressed the requirements of the federal Confrontation Clause. *Id*. at 679. Dansby's specific invocation of the Sixth Amendment and a state court decision that applied the federal constitutional provision, followed by his assertion that the trial court should have allowed him to attack McDuffie's alleged bias and prejudice in certain ways that the trial court prohibited, was sufficient to give the state supreme court fair notice that he raised a federal constitutional claim in addition to a state-law evidentiary argument. *See Snell v. Lockhart*, 14 F.3d 1289, 1298-99 (8th Cir. 1994).

For these reasons, we conclude that the district court erred in determining that Dansby failed to present a Sixth Amendment claim to the Arkansas Supreme Court. The parties have not addressed the extent to which the *factual* premises of Dansby's current federal claim were presented to the state supreme court, so we do not take up that matter. We vacate the dismissal of Claim II and remand the claim to the district court for further consideration.

E.

The final claim on which Dansby received a certificate of appealability concerns alleged prosecutorial misconduct. This claim (Claim III) involves two related allegations: (1) that the State violated the rule of *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding material exculpatory evidence regarding the credibility of Larry McDuffie, and (2) that the State violated Dansby's right to due process by knowingly permitting McDuffie to testify falsely. *See Napue v. Illinois*, 360 U.S. 264 (1959). Dansby contends that the prosecution concealed various unwritten inducements it had offered McDuffie in exchange for his testimony. These inducements included, he asserts, a favorable sentencing recommendation in McDuffie's pending felony drug case and nonenforcement of the conditions of his probation. Dansby also relies on a statement purportedly signed by McDuffie in 2005, in which he recants his trial testimony and accuses the prosecution of directing him to testify in a manner that he told the authorities was not true.

The district court dismissed Dansby's *Brady-Napue* claim on the ground that it was procedurally defaulted. In a motion to alter or amend the judgment, Dansby complained that the court had raised the doctrine of procedural default *sua sponte* without giving the parties appropriate notice and opportunity to be heard. The district court denied the motion, stating that Eighth Circuit precedent authorized the court to consider default *sua sponte*, and that "due to the intertwine of Petitioner's Claims II and III, there was adequate notice of the possibility of procedural default, if any notice was due." Claim II was the alleged violation of the Confrontation Clause.

A federal court has discretion to address procedural default in a habeas corpus case despite the State's failure to present the issue properly. *King v. Kemna*, 266 F.3d 816, 822 (8th Cir. 2001). The Supreme Court has held that before a court may address *sua sponte* a different procedural defense—timeliness of a habeas petition—it must give the parties fair notice and an opportunity to present their positions. *See*

-18-

*Wood v. Milyard*, 132 S. Ct. 1826, 1834 (2012); *Day v. McDonough*, 547 U.S. 198, 210 (2006). The same requirements of notice and opportunity to be heard should apply when a federal court chooses to address procedural default on its own initiative. *See Prieto v. Quarterman*, 456 F.3d 511, 518 (5th Cir. 2006); *Boyd v. Thompson*, 147 F.3d 1124, 1128 (9th Cir. 1998). The district court did not give the parties such notice and opportunity, but the State asserts that its response to Dansby's second amended petition adequately raised the issue of procedural default. We disagree.

The State responded to Claim III of the second amended petition, Dansby's claim based on *Brady* and *Napue*, as follows:

> This issue was addressed to some degree in the first claim of both the original habeas petition and the first amended habeas petition. The arguments from the prior two responses are incorporated herein, as if fully set forth. To the extent that it was not previously addressed, the issue was correctly decided on the merits by the State Supreme Court. The entire argument regarding issues decided correctly on the merits by the state's highest court, set out in claim I of this response, is incorporated herein as if fully set forth.

Resp. to Second Am. Pet. for Writ of Habeas Corpus 5.

The first claim in the original petition and the first amended petition was that the state trial court's ruling on cross-examination of McDuffie violated the Confrontation Clause. In response to the original petition, the State argued that Dansby failed to cite any federal law or to assert constitutional error in state court: "Claim number one was grounded solely in state law, and for that reason is defaulted." Resp. to Pet. for Writ of Habeas Corpus 5. In response to the Confrontation Clause claim raised in the first amended petition, the State incorporated its original response and reiterated that "[t]his issue was presented on state law grounds only to the Arkansas Supreme Court." Resp. to First Am. Pet. for Writ of Habeas Corpus 1.

-19-

We do not understand how the State's incorporation of these responses when answering Dansby's *Brady-Napue* claim gave notice of its position that the *Brady-Napue* claim was procedurally defaulted. If the *Brady-Napue* claim was procedurally defaulted, the default was not occasioned because Dansby argued only state law when challenging the trial court's limitation on cross-examination of McDuffie. Limitation on cross-examination is an issue distinct from whether the prosecution withheld material exculpatory evidence or knowingly presented false testimony. We conclude, therefore, that the parties were not afforded adequate notice and opportunity to be heard on the issue of procedural default, and the *Brady-Napue* claim must be remanded for further consideration.

## III.

In papers filed after this case was briefed, argued, and submitted, Dansby urges this panel to expand the certificate of appealability to encompass four more claims. The district court and an administrative panel of this court denied previous applications on these claims, but Dansby contends that intervening court decisions warrant reconsideration. This panel has authority to expand a certificate of appealability, but we reexamine the action of a prior panel with caution. *Watts v. Norris*, 356 F.3d 937, 941 (8th Cir. 2004). Having considered the issues raised in the postargument motions, we deny the pending applications to expand the certificate.

## A.

Dansby asks us to expand the certificate to encompass Claim XVIII, which asserts that the jury arbitrarily refused to consider mitigating evidence in violation of the Eighth Amendment. The district court concluded that the Arkansas Supreme Court rejected this claim on the merits, and that the decision was not contrary to or an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d). We do not think the state supreme court adjudicated the Eighth

Amendment claim, but Dansby has not made a substantial showing of a denial of a constitutional right. *See id.* § 2253(c)(2).

Dansby's contention is based on the jury's decision to mark Option D on Form 2 of the jury forms. Form 2 was entitled "Mitigating Circumstances." Option D read: "There was no evidence of any mitigating circumstance." Option A permitted the jury to list mitigating circumstances that it unanimously found probably existed at the time of the murder; Option B allowed the jury to list mitigating circumstances that one or more members of the jury believed probably existed, but on which the jury was not unanimous; and Option C applied if the jury found that "there was evidence of" any of six enumerated mitigating circumstances, or any other that the jury might identify, but the jury unanimously agreed that the circumstances did not exist at the time of the murder.

Dansby directs our attention to *Williams v. State*, No. CR93-988, 2011 WL 6275536 (Ark. Dec. 15, 2011), where the Arkansas Supreme Court held that a jury's decision to check Option D of Form 2 in a capital case was reversible error, because the defendant had presented "unrebutted evidence in mitigation." *Id.* at *5. The court reasoned that if the jury did not believe that the evidence presented "rose to the level of mitigating evidence," then it should have marked Option C of Form 2. *Id.* at *6. Applying its precedent in *Anderson v. State*, 163 S.W.3d 333 (Ark. 2004), the court held that the jury's completion of Form 2 meant that "the jury eliminated from its consideration all evidence presented of mitigating circumstances and sentenced Williams to death solely based on the aggravating circumstance, which is reversible error." *Williams*, 2011 WL 6275536, at *6.

We note first that while *Williams* was decided after a panel of this court ruled on Dansby's application to expand the certificate of appealability, *Williams* announced no new rule of law. *Williams* is an unpublished decision that applied the Arkansas court's 2004 decision in *Anderson*.

-21-

Reviewing the matter nonetheless, and assuming for the sake of analysis that the claim is not procedurally defaulted, we conclude that Dansby has not made a substantial showing of a denial of a constitutional right. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). *Williams* does not cite federal law, and neither does *Anderson*. It is not even clear that these state court decisions purport to apply the Eighth Amendment rather than Arkansas law. Dansby suggests that the action of the jury in this case violated the Eighth Amendment as construed in *Mills v. Maryland*, 486 U.S. 367 (1988). *Mills* vacated the imposition of a death sentence where the record showed "a substantial probability that reasonable jurors . . . well may have thought they were precluded from considering any mitigating evidence unless all 12 jurors agreed on the existence of a particular such circumstance." *Id*. at 384; *see also Commonwealth v. Chambers*, 807 A.2d 872, 883 (Pa. 2002) (finding an Eighth Amendment violation where "the instruction, when read as a whole, seems to indicate to jurors that, once they have unanimously found an aggravating circumstance, before they can weigh aggravating circumstances against any mitigating circumstances, they must **all** find the existence of at least one mitigating circumstance").

In our view, there is not a substantial showing on this record of an Eighth Amendment violation based on *Mills*. Option B on the verdict form in this case plainly allowed the jury to list mitigating circumstances that *any one juror* found probably existed, even when the jury did not find that circumstance unanimously. The instructions and forms thus did not run afoul of the rule stated in *Mills*.

Dansby appears to propose a different Eighth Amendment rule—namely, that if the defendant submits evidence that he claims to be mitigating, then a failure of the jury to find that there was evidence of a mitigating circumstance violates the Eighth Amendment. Dansby identifies no decision of the Supreme Court of the United States that so holds, and the Arkansas Supreme Court actually rejects the proposition. In *Hill v. State*, 962 S.W.2d 762 (Ark. 1998), the state supreme court held that "'[a]

jury is not required to find a mitigating circumstance just because the defendant puts before the jury some evidence that could serve as the basis for finding the mitigating circumstance.'" *Id.* at 764 (quoting *Bowen v. State*, 911 S.W.2d 555, 561 (Ark. 1995)). A jury, the court explained, may reject all or any part of a defendant's mitigating evidence. 962 S.W.2d at 764. In this very case, the state supreme court cited *Hill* for that point in dismissing Dansby's claim that his counsel was ineffective at the penalty phase because the jury found no mitigating factors. 84 S.W.3d at 862-63. Dansby's jury was free to reject his proposed mitigating evidence. That the jury marked Option D on the verdict form does not translate into a substantial showing of a constitutional violation.

B.

Dansby next applies for an expanded certificate with respect to Claim V, his argument that ineffective assistance of trial counsel violated his rights under the Sixth Amendment. The district court dismissed the claim as procedurally defaulted because Dansby did not present the alleged deficiencies in counsel's performance to the Arkansas courts. Dansby contends that intervening decisions of the Supreme Court in *Maples v. Thomas*, 132 S. Ct. 912 (2012), and *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), make the district court's procedural ruling debatable. *See Slack*, 529 U.S. at 478. We address each new decision in turn.

1.

*Maples* held that a habeas petitioner showed cause that excused his procedural default under state law when the attorney representing the petitioner abandoned him without notice, and thereby occasioned the default. 132 S. Ct. at 922. In that circumstance, the attorney had severed the principal-agent relationship and no longer served as the client's representative, so the attorney's error was not attributable to the petitioner client. *Id.* at 923.

-23-

Dansby contends that his postconviction attorney, David Talley, ceased to act as his agent because he suffered from a conflict of interest. He highlights the Supreme Court's favorable citation in *Maples* of *Jamison v. Lockhart*, 975 F.2d 1377, 1380 (8th Cir. 1992), which held that attorney conduct may provide cause to excuse a state procedural default where, as a result of a conflict of interest, a postconviction attorney "ceased to be [the petitioner's] agent." *See* 132 S. Ct. at 923.

The factual basis for the assertion of a conflict of interest is as follows. At trial, Dansby was represented by attorney Jan Thornton. Another attorney, Didi Sallings, was then a staff attorney with the Arkansas Death Penalty Resource Center. According to her testimony at the postconviction hearing, Sallings was not counsel of record for Dansby, but she "helped on the Dansby case." Postconviction R. 193. At the time of Dansby's postconviction proceeding, Sallings was the executive director of the Arkansas Public Defender Commission.

When Dansby filed his petition for postconviction relief in state court in May 1995, he was represented by attorney Al Schay. In June 1995, Schay filed a motion for leave to file an expanded amended petition. As an attachment to that amended petition, Schay included an affidavit signed by Sallings. Sallings averred that she had been assigned, as an attorney with the Resource Center, to provide assistance to attorney Thornton in Dansby's case. The Sallings affidavit listed multiple reasons why Sallings believed that Thornton provided ineffective assistance at trial.

In August 1998, the postconviction court appointed attorney Talley, public defender for Union County, Arkansas, to represent Dansby in postconviction proceedings. Several months later, attorney Katherine Streett of the public defender's office wrote to the judge to express her "concern" that attorneys employed by the Arkansas Public Defender Commission "may be unable to represent Mr. Dansby" due to a conflict. Streett recounted that Sallings was then the executive director of the commission and the "titular boss" of attorneys Streett and Talley. Streett's letter

-24-

expressed concern that because Sallings provided assistance to Thornton before and during Dansby's trial, it appeared that the proceeding must address not only Thornton's representation of Dansby, but also Sallings's representation. Streett suggested that the situation created at least "the appearance of a conflict if a public defender represents Mr. Dansby."

The record includes no response from the court and no motion of counsel to withdraw or motion to substitute counsel. Talley and Streett represented Dansby at the evidentiary hearing in the postconviction proceeding. Talley called Sallings as a witness. Consistent with her affidavit, Sallings testified to her belief that Thornton provided ineffective assistance.

We are not convinced there is a debatable question whether Talley ceased to be Dansby's agent because of an alleged conflict of interest between Dansby and Sallings. Sallings was not counsel of record for Dansby at his trial. When Dansby filed his petition for postconviction relief, represented by an attorney unaffiliated with the public defender system, he elected to focus his claims of ineffective assistance of counsel on the performance of attorney Thornton. Sallings actually filed an affidavit *in support* of Dansby's expanded petition, attacking the quality of Thornton's representation. Sallings then testified at the postconviction hearing in support of Dansby's contention that Thornton was ineffective. In this federal habeas action, Dansby seeks to avoid the procedural default of his ineffective assistance claims in order to challenge *Thornton's* performance at trial. Even if Dansby had wished to challenge the "assistance" provided by Sallings, moreover, there is no showing that Talley and Streett owed any duty of loyalty to Sallings as a result of her "titular" status as executive director of the public defender commission. There is also no claim that Sallings had any role in supervising the representation of Dansby in the postconviction proceeding. In our view, this case is a long way from the "veritable perfect storm of misfortune," 132 S. Ct. at 929 (Alito, J., concurring), that befell the petitioner in *Maples*, who missed the filing deadline for a notice of appeal because

he was left without any functioning attorney of record and had no reason to suspect that he had been reduced to *pro se* status.

Dansby also asserts that his agency relationship with postconviction counsel was severed because attorney Talley did not meet the qualifications required for appointment of counsel in capital postconviction proceedings in Arkansas. *See* Ark. R. Crim. P. 37.5 (1998). He first raised this point in the district court in a "Supplement to Motion To Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(e)." R. Doc. 80.[3] The district court denied this aspect of the motion to alter or amend on the ground that Dansby raised an argument that could have been and should have been raised previously. Because the issue was not raised properly in the district court, we will not expand the certificate of appealability to address it on appeal. *Freeman v. Busch*, 349 F.3d 582, 589 (8th Cir. 2003).

2.

Relying on *Martinez*, Dansby contends that ineffective assistance by his postconviction counsel establishes cause to excuse his procedural default on Claim V. In *Wooten v. Norris*, 578 F.3d 767 (8th Cir. 2009), a capital case from Arkansas, this court cited *Coleman v. Thompson*, 501 U.S. 722, 752-55 (1991), for the proposition that "ineffective assistance of counsel during state post-conviction proceedings cannot serve as cause to excuse factual or procedural default." 578 F.3d at 778.

---

[3]Dansby has not challenged the qualifications of attorney Schay, who filed the petition that identified Dansby's claims for postconviction relief. *Cf.* Ark. R. Crim. P. 37.5 (1998) (providing that "*[a]t least one of the attorneys*" appointed to represent the postconviction applicant shall have certain qualifications) (emphasis added). The record does not reflect whether Schay withdrew from representing Dansby in the state postconviction proceeding after Talley was appointed. The district court appointed Schay to represent Dansby in the federal habeas proceeding. R. Doc. 4.

*Martinez* announced a "narrow exception" to the *Coleman* rule:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

132 S. Ct. at 1320.

The court defined "initial-review collateral proceeding" as a collateral proceeding that provides the first occasion to raise a claim of ineffective assistance at trial. *Id.* at 1315. *Martinez* "addresse[d] only the constitutional claims presented in [that] case, where the State barred the defendant from raising the claims on direct appeal." *Id.* at 1320. The case arose from the State of Arizona, and "Arizona does not permit a convicted person alleging ineffective assistance of trial counsel to raise that claim on direct review." 132 S. Ct. at 1313; *see State ex rel. Thomas v. Rayes*, 153 P.3d 1040, 1044 (Ariz. 2007) ("[A] defendant may bring ineffective assistance of counsel claims *only* in a Rule 32 post-conviction proceeding—not before trial, at trial, or on direct review."); *State v. Sang Le*, 212 P.3d 918, 918-19 (Ariz. Ct. App. 2009) ("Because . . . our supreme court has designated Rule 32 proceedings as the proper vehicle for raising such claims, it therefore follows that defendants may not assert ineffective assistance of counsel claims in post-trial motions under Rule 24.2.").

*Martinez* does not apply here, because Arkansas does not bar a defendant from raising claims of ineffective assistance of trial counsel on direct appeal. Arkansas law permitted Dansby to raise a claim of ineffective assistance in a motion for new trial and on direct appeal. Ark. R. Crim. P. 36.22 (1993); *Halfacre v. State*, 578 S.W.2d 237, 239 (Ark. 1979); *Hilliard v. State*, 531 S.W.2d 463, 464-65 (Ark. 1976); *see also*

*State v. Robinson*, 2011 Ark. 90, at *6 (Ark. Mar. 3, 2011); *Rounsaville v. State*, 288 S.W.3d 213, 217 (Ark. 2008); *Missildine v. State*, 863 S.W.2d 813, 818 (Ark. 1993).

The Supreme Court in *Martinez* was clear that its "narrow exception" to *Coleman* was limited to the situation in which the State barred the defendant from raising a claim of ineffective assistance on direct appeal. 132 S. Ct. at 1316. The Court was not silent about a possible extension of *Martinez* to a State that does not impose such a bar. The Court did not expressly reserve judgment, as it sometimes does when a question is debatable. The Court was explicit about the finite scope of its decision: "The rule of *Coleman* governs in all but the limited circumstances recognized here." *Id.* at 1320.

*Martinez* thus does not authorize a departure from our circuit precedent in *Wooten* and similar cases. The district court correctly ruled that Claim V is procedurally defaulted, and *Martinez* does not make the ruling debatable. We need not address whether Dansby makes a substantial showing of a denial of a constitutional right on the merits.

C.

Dansby also applies to expand the certificate of appealability as to a portion of Claim XV, which alleges ineffective assistance of counsel at the penalty stage, and Claim XIX, which asserts ineffective assistance of counsel on direct appeal. The district court dismissed these claims based on procedural default. Relying on *Maples* and *Martinez*, Dansby seeks to expand the certificate. Substantially for the reasons discussed in Part III.B, we deny the application. With respect to Claim XV, Arkansas law did not bar Dansby from asserting in a new trial motion and on direct appeal the ineffective assistance of trial counsel at the penalty stage. On Claim XIX, the narrow exception of *Martinez* is limited to claims of ineffective assistance of *trial* counsel and does not extend to alleged ineffectiveness of appellate counsel. The rule of

-28-

*Coleman* governs these claims, and we need not address whether the merits of either claim satisfies the standard of § 2253(c).

\*      \*      \*

For the foregoing reasons, we vacate the dismissal of Claim II and Claim III in Dansby's second amended petition and remand the case for further consideration of those claims. We affirm the dismissal of the remaining claims on appeal, and deny the applications to expand the certificate of appealability.

_____
